Filed 5/20/24  In re Ma.M. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Ma.M. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B327501 Cons. w/B331793 (Super. Ct. No. 22JV00200, 22JV00201) (Santa Barbara County) |
| SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. H.M. et al., Defendants and Appellants. | |

H.M. (mother) and C.O. (father) appeal the juvenile court's order terminating parental rights as to their son and daughter.

(Welf. & Inst. Code, § 366.26.)[1]  Mother contends the court erred when it declined to apply the parental-benefit exception and selected adoption as the children's permanent plan.  (*Id*., subd. (c)(1)(B)(i).)  Both contend Child Welfare Services (CWS) failed to conduct a proper inquiry under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C., § 1901 et seq.).  We will affirm.

FACTS AND PROCEDURAL BACKGROUND

Three-month old Mi.M. arrived at Lompoc Valley Medical Center in May of 2022 with a spiral fracture of the left humerus. Imaging revealed past fractures of the tibia and two ribs on her left side as well.  The parents said Mi.M.'s two-year-old brother, Ma.M., might have injured her arm while jumping on the bed. The treating physician suspected physical abuse and reported the injuries to CWS.

The juvenile court issued a protective warrant for the children.  CWS alleged Mi.M. suffered her injuries while in the care of father, an active fentanyl user with a history of domestic violence and other crimes.  The court detained the children under section 300, subdivision (b)(1) as to father only and placed them in mother's home pending the jurisdiction and disposition hearing.  It ordered four hours of supervised visitation for father per week and directed him to undergo random drug testing.  It found no reason to believe ICWA applied.

The initial jurisdiction and disposition hearing took place on July 21, 2022.  The court continued the hearing date so father could enroll in a drug treatment program.  It admonished him on the record that "[f]entanyl is a very dangerous addictive drug. You want to get off of it.  Between now and next week it would

---

[1] All statutory references are to the Welfare and Institutions Code.

help your situation to get back into detox." Father responded that he was scheduled to see a physician about Suboxone treatment the next day.

Parents submitted as to jurisdiction and disposition at the continued hearing. The court adopted CWS's recommendation to remove the children from father's custody and provide the mother with family maintenance services and the father family enhancement services. It scheduled an oral interim hearing for September 8, 2022 and a six-month review hearing for January 26, 2023.

CWS reported at the oral interim hearing that mother was participating in services regularly. Father admitted to relapsing on fentanyl in August but continued to attend his drug treatment program. The court encouraged him to "please continue [his] efforts" and congratulated mother for "doing very well" in therapy and domestic violence education.

Paramedics were called to mother's home on December 24, 2022. They found Mi.M. in respiratory distress. She arrived at the emergency room unconscious and did not respond to painful stimuli. Physicians intubated her. She showed "marked improvement in arousal and movement" after they administered Narcan. Mother and father denied Mi.M. was exposed to opiates. Mother initially denied father was in her home at the time of the incident. Mi.M.'s blood tests, however, were positive for fentanyl. Mother admitted she allowed father to visit the children that day. She said "father should not have been in the home but that she did not have any other family or support."

The juvenile court again issued protective custody warrants for the children. CWS removed them from mother's home and placed them with a confidential resource family. CWS filed a

supplemental petition recommending they remain with the resource family going forward. (§ 387.) The juvenile court vacated the upcoming six month review and set a jurisdiction and disposition hearing for February of 2023. Mother and father received four hours of weekly supervised visitation in the interim.

CWS's jurisdiction and disposition report recommended bypassing reunification services for both parents. The juvenile court granted the supplemental petition. It stated: "I can't take any chances, Counsel. I do not think that it will ever be possible for these children to be back in their parents' care, but the window is not closed. They can certainly get their acts together and come back with a 388 petition in the future and see if there's still a possibility to reunite." The court adopted CWS's recommendation to bypass services and scheduled a selection and implementation hearing. (§ 366.26.) It again found ICWA did not apply.

CWS's section 366.26 report recommended terminating parental rights and selecting adoption as the permanent plan for the children. Mother contested the recommendation and requested the juvenile court change the previous order bypassing reunification services. (§ 388.) Her section 388 petition described efforts "to remove herself and her children from [father]" since the last hearing, such as obtaining a three-year protective order against him. She submitted evidence showing she had completed a six-week course in domestic violence, finished her therapy, and enrolled in a weekly parenting class. Mother also contested termination pursuant to the parental-benefit exception to adoption. (§ 366.26, subd. (c)(1)(B)(i).)

The juvenile court held the contested section 388 and selection and implementation hearing on August 31, 2023 and

September 6, 2023. The court denied the mother's request to change court orders finding no change of circumstances and that it would not be in the children's best interest to offer the mother reunification services. The parties stipulated the children were adoptable and that regular visitation had occurred. The juvenile court found that parents had not proven the parental-benefit exception applied. It terminated both mother's and father's parental rights. It reaffirmed ICWA did not apply. We consolidated their separate appeals for oral argument and decision.[2]

## DISCUSSION

### The Parental-Benefit Exception

Mother contends the juvenile court erred when it found the parental-benefit exception to adoption did not apply. She requests we vacate the order terminating parental rights and remand the case with instructions to enter "a lesser permanent plan of guardianship or long-term foster care."

""""At a permanency plan hearing, the [juvenile] court may order one of three alternatives: adoption, guardianship or long-term foster care. [Citation.] If the dependent child is adoptable, there is a strong preference for adoption over the alternative permanency plans." [Citation.]'" (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 316, quoting *In re B.D.* (2021) 66 Cal.App.5th 1218, 1224.) If the juvenile court finds the child adoptable it must terminate parental rights unless one of six statutory exceptions applies. (§ 366.26, subd. (c)(1)(B).) The parental-benefit exception is among these. It allows the court to consider a plan other than adoption if it "finds a compelling reason for determining that termination would be detrimental to the child"

---

[2] See Order dated April 12, 2024.

5

because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Id*., subd. (c)(1)(B)(i).)

A parent invoking the exception must establish three elements by a preponderance of the evidence: (1) "regular visitation and contact" between the parent and child; (2) "a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship"; and (3) "terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*In re Caden C.* (2021) 11 Cal.5th 614, 636 (*Caden C.*).) The parties stipulated mother satisfied the first element by maintaining regular visitation and contact. The juvenile court then found mother established the second element—but not the third. We review the latter finding for abuse of discretion. (See *id*. at pp. 640 ["the ultimate decision—whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent—is discretionary and properly reviewed for abuse of discretion"].)

Mother contends the juvenile court abused its discretion when it found the children would suffer "no detriment" if the court ended their relationship with her. She describes this finding as conflicting with the court's previous finding that the children had a "substantial, positive emotional attachment" to her. Mother argues the court focused inappropriately on the benefits of living with their resource family and had "zero evidence" the children would not suffer harm if mother's parental rights were terminated. We conclude otherwise.

"When [the juvenile court] weighs whether termination would be detrimental, . . . the question is just whether losing the relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 634.) "[T]he court faces the complex task of disentangling the consequences of removing those burdens along with the benefits of the relationship." (*Ibid*.) Such "disentangling" was required here. The court acknowledged the children might suffer some detriment in the future if their relationship with mother were severed. This possibility, however, did not outweigh the benefits of providing them with a permanent, adoptive home. It stated: "Do I see any evidence of detriment? No, I see children who are attached in a positive way to their resource parents and have attachment to their parents as well. It's clear they love their parents and they love them, but they are very young children and I think at this time there's no question that the benefits of adoption greatly outweigh any risk of detriment that may exist to the children by terminating parental rights." The court noted the children's positive development in the resource home and saw "absolutely no evidence of being preoccupied or suffering from emotional instability" since they were removed from mother's care. While mother disagrees with how the court balanced the benefits and harm of terminating her parental rights, we see nothing in the record indicating the court abused its discretion when it found the scales tipped in favor of adoption.

### ICWA Compliance

Father and mother contend CWS's ICWA inquiry was inadequate because it did not contact all extended relatives that parents mentioned during their social study interviews. We

generally review ICWA findings for substantial evidence. (*In re J.K.* (2022) 83 Cal.App.5th 498, 504.) "Because the material facts at issue here are undisputed, "'we review independently whether ICWA requirements have been satisfied.'"" (*Ibid.*) We conclude CWS conducted an adequate injury and the juvenile court properly found ICWA did not apply here.

ICWA defines an "'Indian child'" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C.S. § 1903(4) & (8); § 224.1, subd. (a).) The juvenile court and county welfare department have an affirmative and continuing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child. (§ 224.2, subd. (a); Cal. Rules of Court, rules 5.481(a) & 5.668(c).)

"'The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice."'" (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.) The duty to inquire begins with the initial contact and obligates the juvenile court and the child services agency to ask the child, parents, extended family members, and others who have an interest in the child, whether the child is, or may be, an Indian child. (§ 224.2, subds. (a)-(c).)

The duty of further inquiry is triggered if the child services agency or the juvenile court has "reason to believe that an Indian child is involved in a proceeding." (§ 224.2, subd. (e).) The Legislature defined "reason to believe" as having "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."

8

*Id.*, subd. (e)(1).)  When the "reason to believe" threshold is reached, the requisite further inquiry includes interviewing the parents and extended family members, contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services (SDSS) for assistance in identifying the tribes in which the child may be a member or eligible for membership, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility.  (*Id.*, subd. (e)(2)(A)-(C).)

The juvenile court had no reason to believe Ma.M. and Mi.M. fell within ICWA.  Even if it did, CWS satisfied its duty of inquiry.  Mother and father denied Native American ancestry in the ICWA-020 forms they filed on June 15, 2022.  They denied ancestry again at the June 16, 2022 detention hearing.  Mother told CWS in July of 2022 that she was born and raised in Mexico until age 12.  Her entire family still lives in Mexico except for a brother in New Jersey.  She gave no contact information for her relatives and did not suggest CWS contact them about her ancestry.

Father told CWS that paternal grandmother, aunt, and uncle live in California but likewise did not suggest contacting them about ancestry.  Paternal grandmother and aunt denied Indian ancestry when CWS spoke to them about placement.  Paternal grandmother declined to place CWS in touch with paternal uncle but later relayed to a case worker that he too denied knowledge of such ancestry.[3]  Father had no relationship

_____

[3] We grant CWS's motion to augment the record to include an ICWA Compliance Report filed in the juvenile court on February 13, 2024.  Paternal uncle's denial of Indian ancestry is described in this report.  (See *In re A.B.* (2008) 164 Cal.App.4th

with paternal grandfather and also did not provide contact information regarding other relatives. "Where . . . a parent largely fails . . . to provide names and contact information for extended family members, [CWS's] ability to conduct an exhaustive ICWA inquiry necessarily is constrained." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082, interpreting § 224.2, subd. (b).) "[W]e cannot ask [CWS] to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided." (*Ibid.*)

DISPOSITION

The judgment (order terminating parental rights and selecting adoption as the permanent plan) is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

---

832, 841, 843 [augmentation appropriate when "a limited reversal and remand for compliance with the ICWA inquiry requirement . . . would serve no purpose other than delay"].)

Denise De Bellefeuille, Judge
Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara

_____

Richard L. Knight, under appointment by the Court of Appeal, for appellant, H.M.

Joseph T. Tavano, under appointment by the Court of Appeal for appellant, C.O.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Senior Deputy County Counsel, for Respondent Santa Barbara County Department of Social Services.